J-S38032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| F.A.S., IV, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| R.C.H., FORMERLY R.C.S., | |
| Appellee | No. 354 MDA 2015 |

Appeal from the Order entered January 23, 2015,
in the Court of Common Pleas of Clinton County,
Civil Division, at No(s): 433-2010 CV

BEFORE:  WECHT, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED SEPTEMBER 16, 2015**

F.A.S., IV, ("Father") appeals from the Order granting the Petition for modification of custody filed by R.C.H., formerly R.C.S. ("Mother"), which awarded the parties shared legal custody of two of the parties' female children, H.R.S. (born in October 2001) and A.J.S. (born in April 2003) (collectively, "the Children"), awarded Mother primary physical custody and awarded Father partial physical custody.[1]  We affirm.

The trial court set forth the factual background and procedural history of this case, in relevant part, as follows:

---

[1] Since the hearings in this matter took place in August and October of 2014, the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. ***C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (stating that the Act applies to custody evidentiary proceedings that commence on or after the effective date of the Act, January 24, 2011).

8. The parties were formerly husband and wife, but were divorced [in December 2010].

9. As part of the parties' Divorce Decree, entered [in December 2010, the trial court] adopted the parties' Post Nuptial Agreement, which provided for a 50/50 custody split of the minor [C]hildren.

10. An Order was entered on October 25, 2012[,] which provided that the parties have shared custody on a 5 day/5 day/2 day/2 day schedule. Specifically, Mother has the [C]hildren on Monday and Tuesday, Father has the [C]hildren on Wednesday and Thursday, and the weekends alternate.

11. On January 17, 2013, the [trial court] entered an Order which provided that the parties would share custody on a week to week basis over the summer months.

12. Since January 17, 2013, the parties have been following the 5 day/5 day/2 day/2 day schedule during the school year[,] and the week to week schedule during the summer.

Trial Court Opinion, 1/23/15, at 2 (unnumbered).

On July 3, 2014, Mother filed a Petition for modification of custody, seeking primary physical custody of the Children. At the hearings held on Mother's Petition, Mother and Father testified on behalf of themselves. In addition, the trial court examined the Children in chambers, with counsel for

both parties present. [2] Although the parties' daughter, B.R.S. was questioned by both counsel, only Father's counsel questioned H.R.S.

After the hearing, the trial court found that both Mother and Father reside in Jersey Shore, Pennsylvania. Additionally, the trial court made the following findings of fact:

3. Mother works at Jersey Shore Hospital as an occupational therapist. Her work schedule is Monday through Friday from 8:00 A.M. to somewhere between 1:00 P.M. and 4:30 P.M.; however, she also works one Sunday per month.

4. There was no testimony regarding Father's place of employment or his current work schedule.[[3]]

5. At the time the [P]etition was filed, the parties were the parents of three (3) minor children, [B.R.S.], [H.R.S.], and [A.J.S.]. . . .

_____

[2] The trial court noted that, at the time Mother filed her Petition for modification of custody, the parties' third daughter, B.R.S. (born in October 1996), was a minor. Trial Court Opinion, 1/23/15, at 1 (unnumbered). B.R.S. turned eighteen prior to the entry of the custody Order at issue in this appeal. Thus, the trial court stated that B.R.S. is able to decide for herself regarding her primary residence. *Id.* at 6 (unnumbered). The trial court concluded, however, that B.R.S.'s testimony remains relevant because she was able to elaborate on the circumstances surrounding the filing of the Petition, as well as her interactions with her parents and sisters regarding this matter. *Id.* at 6-7 (unnumbered). The trial court also noted that the parties are the parents of an adult son, F.A.S., V ("F.A.S."), who was nineteen years old at the time of entry of the custody Order. *Id.* at 2 (unnumbered).

[3] On cross-examination, Father confirmed that he was still working for Verizon, as he testified at a previous hearing, and that he leaves for work at approximately 6:35 a.m., taking A.J.S. to her bus stop, and that he arrives home at 4:00 p.m. N.T., 10/14/14, at 85. There was no further testimony concerning Father's employment.

6. All three girls are currently enrolled in the Jersey Shore Area School District. [B.R.S.] is in twelfth grade at the Jersey Shore High School. [H.R.S.] is in seventh grade at the Jersey Shore Middle School. [A.J.S.] is in fifth grade at the Jersey Shore Elementary School.

* * *

13. Mother and Father have a notebook that they pass back and forth when exchanging custody. The notebook contains notes on what is going on with each child, i.e.[,] things that happened while the child was in the other party's custody or upcoming events, etc.

* * *

15. Mother testified that she had written something in the notebook regarding custody prior to filing with the Court.

16. The issue of changing the custody schedule was originally brought up by [H.R.S.], who testified that she got into an argument with her Father[,] and afterward told Mother she would prefer if Mother had primary physical custody.

17. After [H.R.S.] brought up the issue of custody, Mother asked [B.R.S.] and [A.J.S.] about it[,] and both girls told Mother that they also would prefer [that] Mother have primary physical custody.

18. Mother decided to file for custody after having these discussions with her daughters. Mother, as well as the girls, testified that neither parent had brought up the issue of custody to the [C]hildren; it was all prompted by H.R.S.'s original discussion with Mother.

19. [In July 2014], Mother married [D.H. ("Stepfather")]. The [C]hildren testified that they get along with [Stepfather], but that they have overheard him say negative things about [Father].

20. Father is currently in a relationship with his girlfriend, [R.,] who lives in the Bellefonte area, but she and Father spend a considerable amount of time together. The [C]hildren get along

with [R.], but again they have heard her saying negative things about [Mother].

21. [B.R.S.] and [H.R.S.] are very involved in sports. Both girls play basketball and softball. Father coaches their softball teams.

22. During the October 14, 2014 hearing, each of the three girls offered testimony to the [trial court] regarding their preferences.

23. [B.R.S.] testified that her preference would be for Mother to have the girls for the majority of time[,] with Father having extended, alternating weekends. She stated that she prefers more time with Mother because she is more comfortable with her [m]other[,] and Mother is easier to talk with.

24. [B.R.S.] stated that [Father] approached her about the custody issue[,] and told her that she was being "selfish[,]" and that[,] if Mother were to get primary custody[,] he would lose his house[,] and would have to live with his mother. Father was crying during this conversation with [B.R.S.].

25. [B.R.S.] testified that she has discussed the matter of custody with her sisters[,] and she believes [H.R.S.] and [A.J.S.] would also prefer to reside primarily with Mother; however, [H.R.S.] has since changed her mind because she does not like conflict.

26. [B.R.S.] also stated that she believes all three girls should have the same custody schedule because they have always been together[,] and she noted that since [F.A.S.] began living solely with Father[,] they rarely see him.

27. [H.R.S.] testified that she did initially bring up the idea of Mother having primary custody, but she has since changed her mind[,] and she would prefer for the custody schedule to remain as it is now. She does believe that all three girls should have the same custody arrangement, though.

28. During her testimony, [H.R.S.] testified that she is also more comfortable talking to [Mother]. She stated that Father pushes her to tell him everything[,] and she is not always comfortable talking to him.

- 5 -

29. [H.R.S.] stated that Father discussed the issue of custody with her after Mother filed the papers. She stated Father was crying as he told her that[,] if Mother gets primary custody[,] he would only see the girls four (4) times a month. [H.R.S.] testified that this upset her.

30. [A.J.S.] testified that she would prefer spend more time with Mother.

31. [A.J.S.] stated that[,] during Father's custodial periods[,] her grandmother helps her with homework[,] and she does not like that, because if [her] grandmother can't help her[,] then she has to ask [Father] and[,] if he is unable to help[,] then she has to ask her sisters[,] and they don't like to help her.

32. When at Mother's [home], Mother helps [A.J.S.] with homework. [A.J.S.] stated that she understands her school work better when Mother helps with it.

33. Because [A.J.S.] is more comfortable doing her homework with Mother, she testified that she would prefer Mother have custody on school days[,] and Father have custody on alternating weekends.

34. [A.J.S.] did state that she talked to [B.R.S.] about custody[,] and that [B.R.S.] told her what she would prefer but made sure that [A.J.S.] knew she did not have to agree with it.

35. According to [A.J.S.], at one point[,] Mother explained to all three girls what was going on with the court filings[,] and gave them a calendar to sit down and decide what custody schedule they would prefer. Mother left the girls alone to discuss their preferences, and [B.R.S.] marked her preference as Monday through Thursday with Mother and alternating weekends, from Friday to Sunday, with Father. [A.J.S.] stated that she was in agreement with this because it would allow Mother to be the one who helps her with homework[,] and she would get weekend time with both Mother and Father. [A.J.S.] stated that[,] during this discussion, [H.R.S.] indicated that she would prefer the schedule remain as it is now.

36. [A.J.S.] testified that [Father] spends a lot of time with [B.R.S.] and [H.R.S.'s] softball teams; therefore, she doesn't get

to see him much. She ends up being with either paternal grandmother or Father's girlfriend during those times.

37. Consistent with [B.R.S.] and [H.R.S.], [A.J.S.] also stated that she believes all three girls should have the same custody schedule.

38. Again consistent with her sisters' testimony, [A.J.S.] stated that she is more comfortable talking with [Mother] than she is [with Father].

39. Father also told [A.J.S.] that[,] if Mother were to have more custodial time[,] he would be forced to pay her more in child support[,] and would[,] therefore[,] lose his home[,] and have to live with his mother.

40. There was an issue regarding summer homework that [A.J.S.] was supposed to do in order to prepare her for her next school year. Father testified that he did this summer work with [A.J.S.], but both [A.J.S.] and [B.R.S.] stated that Father did not do the summer work with [A.J.S.]. [A.J.S.] testified that Mother would send the papers to Father's home by way of the notebook that the parents exchange[,] but that Father never did them with her[;] instead he would let her play educational apps on a Kindle.

41. It is noted that both Mother and Father also testified that they believe it is important for the three girls to remain together and have the same custody schedule; however, as [B.R.S.] is now eighteen (18) years old and able to decide for herself where she wants to live, Father does not believe that the other two girls should be forced to reside primarily with Mother just because [B.R.S.] may decide to do so.

Trial Court Opinion, 1/23/15, at 1-6 (unnumbered) (footnote added).

In an Order entered on January 23, 2015, the trial court awarded primary physical custody to Mother, with Father receiving partial physical custody in accordance with a schedule, and shared legal custody. Father

timely filed a Notice of Appeal and a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following claims for our review:

A. Did the trial court err in failing to require [Stepfather] to be viewed by the court and subject to cross examination[?]

B. Did the trial court err in showin[g] bias against [Father] by total[ly] ignoring or unreasonably rejecting issues raised by evidence of record:

1. Mother's continuous hostility toward Father as evidenced by her assisting [F.A.S.,] to escape from [Father's] custody during the middle of the night without notifying [Father;]

2. Mother's immature and dangerous reaction when she became annoyed with [F.A.S.] and threw him out of her house, disabled his cell phone, knowing that [F.A.S.] would have approximately a ten (10) mile walk through a wooded area to [Father's] residence[;]

3. [Stepfather's] bizarre behavior and alcohol[-]related conduct in front of the Children[?]

C. Did the trial court err in unreasonably considering [B.R.S.'s] desires and testimony[,] as she is not a minor[,] and was not subject to the court's jurisdiction as of October 21, 2014[?]

Father's Brief at 7.

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge[,] who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are

- 8 -

unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 445 A.3d 441, 443 (Pa. Super. 2012).

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. ***Id.*** § 5338. To make this determination, Section 5328 of the Act sets forth the following factors that the trial court must consider:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*Id.* § 5328.[4] "*All* of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); *accord A.V. v. S.T.*, 87 A.3d 818, 822 (Pa. Super. 2014).

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

---

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Although the amendment was in effect at the time of the custody hearings in August and October of 2014, the trial court did not specifically address it in its Opinion entered on January 23, 2015. The trial court, however, stated that there was no testimony of abuse by any party, and that the Children are safe in both homes. Trial Court Opinion, 1/23/15, at 8 (unnumbered).

***A.V.***, 87 A.3d at 822-23.[5]

In his first issue on appeal, Father claims that the trial court erred in failing to require that Stepfather be subject to cross-examination. Father's Brief at 11. In a related claim raised in Father's second issue, Father claims that the trial court erred in disregarding the uncontested testimony that Stepfather has threatened and intimidated Father, and that Stepfather has displayed bizarre and alcoholic behavior. ***Id.*** Father urges that these matters are particularly relevant to the factors set forth at Section 5328(a)(14), (15), and (16). Father's Brief at 11-12. According to Father, subsections (14) and (15) direct the court to consider the history of drug and alcohol abuse of a member of the party's household, and the mental and physical condition of a member of the party's household. ***Id.*** at 11. Father alleges that Mother has allowed Stepfather's hostility against him to be very apparent to the Children. ***Id.*** Father also asserts that Mother's cavalier attitude toward Stepfather's behavior in front of the Children is disturbing. ***Id.***

---

[5] In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court adopted the reasoning set forth in its Opinion and Order entered on January 23, 2015, which set forth its analysis of the section 5328(a) custody factors. On March 6, 2015, the trial court filed an Amended Opinion and Order, correcting a typographical error in the date of the October 14, 2014 custody hearing. The trial court noted that Father had not requested the transcription of either hearing in this matter. Nevertheless, transcripts of the two days of hearings are part of the certified record, so we are able to conduct our appellate review.

Upon review, we conclude that Father has waived any objection to the lack of testimony by Stepfather, as he did not object to the absence of Stepfather's testimony at the custody hearing. Issues not raised in the trial court are waived, and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a); **E.D.**, 33 A.3d at 78. Additionally, Father could have presented Stepfather as a hostile witness in his own case.[6]

Even if Father had preserved his issue, we would conclude that it lacks merit. The record reflects that the trial court considered the hostilities between the parties, and their significant others, in relation to section 5328(a)(13):

> There exists quite a bit of conflict between the parties in this matter. Since their separation, the parties' primary form of communication is through text messages or the use of the notebook that the parties exchange back and forth. Both parties also testified that they have experienced conflict with the other party's significant other. [Stepfather] has been known to criticize Father; however, the [C]hildren did indicate that he does not do so directly in front of them but they have overheard his comments. Both parties, as well as the [C]hildren, testified that Mother attempts to put a stop to [Stepfather's] negative comments. Mother has also been on the receiving end of negative comments made by Father's girlfriend, [R.], some of which have been made in the presence of the [C]hildren. There was no testimony that Father attempts to put a stop to [R.'s] behavior.

Trial Court Opinion, 1/23/15, at 13-14 (unnumbered). In relation to Section 5328(a)(14), and (15), the trial court observed that

---

[6] The record reflects that the parties agreed to the structure of the hearing, with Mother first addressing the sixteen best interest factors, followed by Father addressing the factors. N.T., 8/13/14, at 3-4.

- 13 -

[t]here was no testimony of drug or alcohol abuse by any party or member of the party's household. There was some discussion of the fact that Mother and [Stepfather] go to different clubs during the weeks to sign the books; however, there was no indication that they spend significant amounts of time drinking in these clubs or that they are alcoholics. They merely go around and sign the books in attempts to win some money.

\* \* \*

… Father and [R.] have no mental or physical conditions. There was no indication that [Stepfather] suffers from any mental or physical condition. However, Mother testified that she is currently prescribed 10 mg. of Celexa for anxiety, a condition that began right after [A.J.S.] was born. Mother stated that this condition is treated through her family physician; she does not see a psychiatrist. She does not believe that her anxiety affects her ability to care for her [C]hildren.

Trial Court Opinion, 1/23/15, at 14-15. The trial court's findings are supported by evidence presented at the custody hearings.

At the hearings, Mother denied that she or Stepfather have ever had drug or alcohol issues. N.T., 8/13/14, at 38. Mother admitted that she takes Celexa daily as prescribed by her family physician for her anxiety. *Id.* at 39. Mother stated that her medication controls her condition, and that the Children are not affected. *Id.* The parties thoroughly explored an incident involving Stepfather dancing on a table at a wedding, in front of the Children, after he had been drinking. N.T., 10/14/14, at 98-99. Mother admitted that the Children were present at the time, and denied that Stepfather was drunk. *Id.* According to Mother, Stepfather was behaving like the "class clown," and that he does not need alcohol to behave in that

manner. *Id.* After a careful review of the record, we would not disturb the trial court's findings regarding Stepfather. *C.R.F.*, 45 A.3d at 443.

In his second issue, Father claims that the trial court was biased against him because it ignored, or unreasonably rejected, almost every issue that Father raised. Father's Brief at 12. Father bases his claim of bias on the trial court's rejection of the claims as to Stepfather. *Id.* at 11-12. Father also directs our attention to evidence regarding the dispute between Mother and their son, F.A.S. *Id.*

Our review discloses that at the custody hearing, Mother explained that the incident had occurred in August 2011, when F.A.S. was seventeen years old, and that the trial court had addressed the incident in a prior custody order. N.T., 8/13/14, at 45-49. Mother testified that she has since worked through her difficulties with F.A.S., and that they speak on the telephone or send text messages to each other. *Id.* at 107. Father did not present evidence disputing Mother's testimony. The trial court opted not to afford any weight to the incidents that occurred during the time when the parties were struggling with F.A.S. Again, after a careful review of the record, we do not disturb the trial court's findings. *See C.R.F.*, 45 A.3d at 443.

In his third issue, Father claims that the trial court improperly considered the testimony of the parties' oldest daughter, B.R.S. Father's Brief at 12. Because Father presents this claim for the first time on appeal,

having failed to object to B.R.S.'s testimony at the custody hearing, the claim is waived. *See* Pa.R.A.P. 302(a); *E.D.*, 33 A.3d at 78.

Had Father preserved the issue, we, nevertheless, would have found that it lacks merit. It was appropriate for the trial court to consider the testimony of B.R.S., particularly pursuant to section 5328(a)(5), as part of the extended family of the Children, and section 5328(a)(6), as a sibling of the Children. B.R.S.'s testimony was also relevant under section 5328(a)(16), "[a]ny other relevant factor."

In relation to section 5328(a)(5), (6), and (16), the trial court stated the following:

> Mother testified that she has sisters in the area[,] and that she gets along well with them. Her mother also resides in this area. There was no testimony as to how close the [C]hildren are to Mother's family members. As for Father, his parents and siblings reside in the area. Again, there was no testimony as to how close the [Children] are to their aunts and uncles on Father's side, but they do see their paternal grandmother very often.
>
> * * *
>
> The three girls seem to be very close to one another and there was testimony that this has been the case since the time of the parties' divorce. All three girls seem very in tune with each other's desires and characteristics. All three girls stated that they would prefer to have the same custody schedule so that they can remain together. With specific focus on the two minor [C]hildren, [H.R.S.] and [A.J.S.], it is clearly in their best interest to remain together as they have never been separated. This seems most important with respect to [A.J.S.], who is young and looks up to her older siblings. All three girls testified that they are not very close to their older brother, [F.A.S.], as he lives primarily with Father[,] and he is not around much because he works alot [*sic*].

- 16 -

\* \* \*

    . . . The only other relevant factor that this [c]ourt believes
    should be considered is the attempts of Father to sway the
    [Children's] preferences with regard to the custody
    arrangements. Father testified that he spoke to each of the girls
    regarding the custody matter multiple times after becoming
    aware that Mother filed the Petition to Modify. He stated that he
    cried in front of the girls[,] and that he did, in fact, tell them
    that[,] if Mother is to gain primary custody[,] he would lose his
    home and have to live with his mother. The [c]ourt is convinced
    that this was an attempt by Father to manipulate the [C]hildren
    into changing their minds regarding their preferences. As
    discussed, the [c]ourt believes that this tactic did, in fact, have
    an impact on [H.R.S.'s] preference.

Trial Court Opinion, 1/23/15, at 14-15. Ultimately, the trial court concluded

that,

    [b]ased upon the consideration of the above factors, the [trial
    court] is of the opinion that it would be in the best interests of
    the [C]hildren to live primarily with Mother. Mother is clearly the
    more nurturing caregiver of the two parties. Both [H.R.S.] and
    [A.J.S.] testified that they are more comfortable with Mother.
    Mother puts more emphasis on [A.J.S.'s] school work and her
    special needs when it comes to her education. While the [trial
    court] acknowledges that [H.R.S.] stated a preference for the
    custody schedule to remain the same, the [trial court] believes
    that it is in the best interests of both girls to remain on the same
    custody schedule[,] and notes that all parties testified that
    [H.R.S.] originally exhibited a preference for Mother having
    primary custody[,] but has since changed her mind. The [trial
    court] believes that the [C]hildren will benefit from a schedule
    where Mother has custody on the majority of school days[.]

Trial Court Opinion, 1/23/15, at 15 (unnumbered). Thus, the trial court's

determination did not rest upon the testimony of B.R.S., alone, but on the

testimony of H.R.S. and A.J.S. in relation to B.R.S.'s testimony as their sibling.

Having found no error or abuse of discretion, we affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2015